**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

D'Eric Simmions and Gerald Coulter, individually
and on behalf of all others similarly-situated,

                      Plaintiffs,

              v.

Pierless Fish Corp., and Robert DeMasco,
in his individual and corporate capacity,

                      Defendants.

No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS AND COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs D'Eric Simmions ("Mr. Simmions") and Gerald Coulter ("Mr. Coulter"),

individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and

through their attorneys, The Ottinger Firm, P.C., as and for their Complaint in this action against

Defendant Pierless Fish Corp. (the "Company" or "Pierless Fish,") and "Robert DeMasco" ("Mr.

DeMasco") (collectively, "Defendants"), allege upon personal knowledge and upon information

and belief as to other matters as follows:

## NATURE OF THE CLAIMS

1.　　　Plaintiffs, current and/or former non-exempt employees employed by Defendants,

bring this action on their own behalf and on behalf of the proposed collective and Rule 23 classes

identified below, against Defendants for violations of: (1) the minimum wage and overtime

requirements under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); (2) the

minimum wage and overtime requirements under New York Labor Law ("Labor Law" or

"NYLL"), §§ 650 *et seq*.; (3) the spread of hours requirement under New York State Regulation

12 NYCRR § 137-1.7 ("NYCRR"); (4) the wage statement and notice requirements of NYLL §

1

195; (5) the prohibition against taking deductions from wages under NYLL § 195; and (6) any other claim(s) that can be fairly inferred from the facts set forth herein.

2.      Plaintiff seeks to represent a class made up of all persons who are or have been employed by Defendants as Driver's Assistants, Drivers, or other similar non-exempt jobs in New York State during the applicable statute of limitations period under both the FLSA and NYLL.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 as this case is brought under the FLSA. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the wage violations which gave rise these claims primarily occurred in this District.

5.      Plaintiffs' claims are properly consolidated as a single action because their claims involve the same Defendants, arise from the same nexus of facts and circumstances, and involve nearly identical issues of fact and law.

## THE PARTIES

6.      Plaintiff D'Eric Simmions resides in Kings, New York. Mr. Simmions was employed by Defendants from on or around June 27th, 2014, through present.  At all relevant times, Plaintiff D'Eric Simmions was an "employee" within the meaning of the FLSA and NYLL.

7.      Plaintiff Gerald Coulter resides in Brooklyn, New York. Mr. Coulter was employed by Defendants from around November 2014 through January 2017. At all relevant times, Plaintiff Gerald Coulter was an "employee" within the meaning of the FLSA and NYLL.

8.    Pierless Fish is a domestic business corporation organized and existing under the laws of the State of New York, with its principal place of business located at Brooklyn, New York.  At all relevant times, Pierless Fish was an "employer" within the meaning of the FLSA and NYLL.

9.    Defendant Mr. DeMasco resides in Kings County, New York.  Upon information and belief, at all relevant times Mr. DeMasco has been the Chief Executive Officer of Pierless Fish Corp., in active control and management of the Company, and regulated the employment of persons employed by the Company, including Plaintiffs. At regular times each year, Mr. DeMasco physically visited the work premises of Pierless Fish Corp. to evaluate the work of, determine compensation awards and adjustments for, and terminate the employment of employees such as plaintiffs. At all relevant times, Mr. DeMasco was an "employer" within the meaning of the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

10.    Plaintiffs bring this action on behalf of themselves and other employees similarly situated, as authorized under 29 U.S.C. § 216(b).  The employees similarly situated are:

> **FLSA Collective Action:** All persons who are or have been employed by Defendants as Driver's Assistants, Drivers, or other similar non-exempt jobs, at any location operated by Defendants in the State of New York from three (3) years prior to this action's filing date through the date of the final disposition of this action, who were subject to Defendants' unlawful practice of (i) failing to pay the applicable minimum wage; and (ii) failing to pay applicable overtime premiums for all hours worked in excess of 40 hours per workweek.

11.    Defendants employed Plaintiff D'Eric Simmions, Gerald Coulter, and the members of the FLSA Collective Action during the time period relevant to the FLSA Collective Action, and classified Plaintiffs as non-exempt from the minimum wage and overtime requirements of the FLSA.

12.     Defendants each meet the definition of an "employer" under the FLSA. By way of examples only, Defendants control how much the FLSA Collective Action members are paid, maintain all-time records for the FLSA Collective Action members, assign and supervise all of the tasks given to the FLSA Collective Action members, and maintain and exercise control as to how the FLSA Collective Action members are to perform their tasks.

13.     Each of the FLSA Collective Action members are or were non-exempt employees entitled to overtime compensation for all hours worked in excess of 40 hours per workweek.

14.     However, at all times during the FLSA Collective Action period, Defendants failed to pay the Collective Action members overtime premiums for all hours worked in excess of 40 per workweek.

15.     Additionally, at all times during the FLSA Collective Action period, Defendants failed to pay the Collective Action members hourly wage for all hours worked at and below 40 per workweek.

16.     Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Action members.

17.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Action members and, as such, notice should be sent to the FLSA Collective Action members.

18.     There are, upon information and belief, more than 40 similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.  Those similarly situated individuals are known to Defendants and are readily identifiable through Defendants' records.

## CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following defined class:

> **New York Class:** All persons who are or have been employed by
> Defendants as Driver's Assistants, Drivers, or other similar non-exempt
> jobs, at any location operated by Defendants in New York from six (6)
> years prior to this action's filing date through the date of the final
> disposition of this action and who were subject to Defendants' unlawful
> practice of (i) failing to pay the applicable minimum wage; and (ii) failing
> to pay applicable overtime premiums for all hours worked in excess of 40
> hours per workweek (iii) taking deductions from Plaintiffs' earned wages
> in violation of NYLL § 193; and (iv) failing to furnish wage statements
> that specifically enumerated certain criteria, as required by NYLL §
> 195(3).

20.     At all times during the time period relevant to the New York Class, Defendants,

as a matter of policy, (i) did not pay Plaintiffs or the New York Class any wages or the

applicable overtime premium pay rate for all hours worked in excess of 40 per workweek; (ii)

did not pay Plaintiffs or the New York Class spread of hours compensation; (iii) took deductions

from Plaintiffs' earned wages based on Defendants' assessment of Plaintiffs' work performance

and for other reasons and purposes prohibited by the NYLL; and (iv) failed to furnish correct and

accurate wage statements required by the NYLL.

21.     The facts as alleged in Paragraphs 11-18 with respect to the FLSA Collective

Action are similarly true for the New York Class during the time period relevant to the New

York Class.

22.     Defendants failed to make, keep, and/or preserve accurate records with respect to

Plaintiffs and the New York Class and failed to furnish to Plaintiffs and the New York Class an

accurate statement an appropriate statement of wages, in violation of the NYLL and supporting

New York State Department of Labor regulations.

5

23.     Numerosity: The proposed New York Class is so numerous that joinder of all members is impracticable. Upon information and belief, during the relevant time period, Defendants employed in excess of 40 people who fall within the New York Class and thus satisfy the numerosity definition of the proposed New York Class.

24.     Typicality: Plaintiffs' claims are typical of the members of the proposed New York Class.  During the New York Class period, Defendants subjected Plaintiffs and the members of the New York Class to same policy and practice of failing to pay them minimum wage and overtime compensation required by the NYLL.

25.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

26.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the proposed New York Class and have retained counsel experienced in FLSA and NYLL class and collective action litigation.

27.     Commonality: Common questions of law and fact exist with respect to all members of the proposed New York Class that predominate over any questions solely affecting individual members of the proposed New York Class, including but not limited to:

a.     Whether Defendants violated the NYLL as alleged herein;

b.     Whether Defendants unlawfully failed to pay the applicable minimum wage to members of the New York Class in violation of the NYLL;

c.     Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the New York Class in violation of NYLL;

d.     Whether Defendants unlawfully failed to pay spread of hours compensation to members of the New York Class in violation of NYLL;

e.     Whether Defendants took unlawful deductions from wages earned by members of the New York Class in violation of NYLL;

f.     Whether Defendants employed Plaintiffs and the New York Class within the meaning of New York law;

g.     Whether Defendants should be enjoined from continuing the practices that violate the NYLL;

h.     What the proper measure of damages sustained by the New York Class are; and

i.     Whether Defendants' actions were "willful."

28.     The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class could result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

29.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the New York Class the wages to which they are entitled. The damages suffered by the New York Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior

because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments of Defendants' practices.

30.      Plaintiffs intend to send notice to all members of the New York Class to the extent required by Rule 23.  The names and addresses of the New York Class are available from Defendants.

**INDIVIDUAL FACTUAL ALLEGATIONS**

**Plaintiff D'Eric Simmions**

31.      As outlined above, Defendants employed Plaintiff D'Eric Simmions as Driver's Assistant from approximately June 27th, 2014, through the present.

32.      As a Driver's Assistant and other associated positions, Plaintiff D'Eric Simmions and other members of the proposed collective and Rule 23 classes were primarily responsible for transporting fish.

33.      At all times during employment, Defendants classified Plaintiff D'Eric Simmions as a non-exempt employee entitled to the protections of the FLSA and NYLL.

34.      Defendants compensated Plaintiff D'Eric Simmions on an hourly basis.

35.      During most weeks of employment, Defendants required Plaintiff D'Eric Simmions to work in excess of 40 hours per week.

36.      By way of example, during a typical workweek, Plaintiff D'Eric Simmions generally worked in excess of 50 hours per week, based on the following work schedule:

    i.  Monday, from 5:30 a.m. to 1:30 p.m. or later (i.e., 9 or more hours);

    ii.  Tuesday, from 5:30 a.m. to 1:30 p.m. or later (i.e., 9 or more hours);

    iii.  Wednesday, from 5:30 a.m. to 1:30 p.m. or later (i.e., 9 or more hours);

    iv.  Thursday, from 5:30 a.m. to 1:30 p.m. or later (i.e., 9 or more hours);

v.   Friday, from 5:30 a.m. to 1:30 p.m. or later (i.e., 9 or more hours); and

vi.   Saturday, from 5:30 a.m. to 1:30 p.m. or later (i.e., 9 or more hours).

37.     Mr. Simmions was instructed to return to base by 2:00 p.m., after nine hours of work. Upon his return to base, Defendants would at times require Mr. Simmions for a second delivery, extending his day until 7:00 p.m. or 8:00 p.m.

38.     After such a fifteen or sixteen-hour shift, Mr. Simmions was always required to return to work the following day, beginning at 5:30 a.m. (with the exception of Sunday).

39.     Defendants paid Plaintiff D'Eric Simmions only some of the overtime wages he was owed. For example, Mr. Simmions was paid for 47.75 hours – 7.75 hours of overtime – in both the weeks of April 9 and April 16 despite definitively having worked a different number of hours those two weeks, which each totaled over 50 hours worked upon information and belief.

40.     In such recurring incidents, Mr. Simmions was told by the Administration Department that his earned overtime wages had been "deducted" by Defendants due to driving-related tickets.

41.     For every ticket Mr. Simmions received three hours of earned overtime wages were deducted from his paycheck.

42.     Defendants required Plaintiff D'Eric Simmions and other members of the proposed collective to engaged in reckless and illegal activity or face penalization.

43.     By requiring all drivers to answer his/her personal mobile phone at all times, Defendants endangered the welfare of their employees and the public.

44.     According to Mr. Simmions, declining phone calls from Defendants was not tolerated; even if the employee stated he/she was driving at the time and therefore unable to answer their mobile phone legally.

45.     In 2016, Defendants gave Plaintiffs radios to use instead of their personal mobile phone. However, if a radio is not available or not in service, Defendants still require Plaintiffs to use their personal mobile phone and remain available at all times, despite the illegality of such actions.

46.     Plaintiff D'Eric Simmions was also subject to harassment, directly from Mr. DeMasco.

47.     Mr. DeMasco was prone to outbursts which carried racist undertones, directed at Mr. Simmions, who is of African-American decent, and other members of the proposed collective.

48.     Mr. Simmions once attempting to decline overtime hours, when Mr. DeMasco gave him another assignment after a nine-hour shift. Mr. DeMasco grew agitated, calling Mr. Simmions a "dog" and denying his request.

49.     Plaintiff D'Eric Simmions and other members of the proposed collective were not paid consistently by Defendants, in order to force Plaintiffs to work overtime.

50.     When Defendants needed Plaintiffs to work overtime on Saturday, Defendants would hold paychecks, which were scheduled to be released the Friday before.

51.     Mr. Simmions recalls Defendants explicitly informing him and other members of the proposed collective that they would only receive their paycheck if they worked overtime the next day (Saturday).

**Plaintiff Gerald Coulter**

52.     As outlined above, Defendants employed Plaintiff Gerald Coulter as a driver from approximately November 2014, through January 2017.

53.     As drivers and other associated positions, Plaintiff Gerald Coulter and other members of the proposed collective and Rule 23 classes were primarily responsible for transporting and delivering product.

54.     At all times during employment, Defendants classified Plaintiff Gerald Coulter as a non-exempt employee entitled to the protections of the FLSA and NYLL.

55.     Defendants compensated Plaintiff Gerald Coulter on an hourly basis.

56.     During most weeks of employment, Defendants required Plaintiff Gerald Coulter to work in excess of 40 hours per week.

57.     By way of example, during a typical workweek, Plaintiff Gerald Coulter generally worked in excess of 50 hours per week, based on the following work schedule:

  i.     Monday, from 5:00 a.m. to 2:00 p.m. or later (i.e., 9 or more hours);

  ii.    Tuesday, from 5:00 a.m. to 2:00 p.m. or later (i.e., 9 or more hours);

  iii.   Wednesday, from 5:00 a.m. to 2:00 p.m. or later (i.e., 9 or more hours);

  iv.    Thursday, from 5:00 a.m. to 2:00 p.m. or later (i.e., 9 or more hours);

  v.     Friday, from 5:00 a.m. to 2:00 p.m. or later (i.e., 9 or more hours); and

  vi.    Saturday, from 5:00 a.m. to 2:00 p.m. or later (i.e., 9 or more hours).

58.     Mr. Coulter was instructed to return to base by 2:00 p.m., after nine hours of work. Upon his return to base, Defendants would at times require Mr. Coulter for a second delivery, extending his day until 7:00 p.m. or 8:00 p.m.

59.     After such a fifteen or sixteen-hour shift, Mr. Coulter was always required to return to work the following day, beginning at 5:00 a.m. (with the exception of Sunday).

60.     Defendants paid Plaintiff Gerald Coulter only some of the overtime wages he was owed.

61.     When Mr. Coulter worked over 40 hours a week, his overtime pay was deducted from his paycheck by Defendants.

62.     Defendants told Mr. Coulter that he was being fined by them, for any traffic related tickets or missed deliveries he had made.

63.     When Mr. Coulter worker under or at 40 hours a week, Defendants would also reduce his regular pay for any traffic related tickets or missed deliveries.

64.     For example, if Mr. Coulter made a delivery to the wrong location or made an error which caused the product to be late, he was fined for the price of the product.

65.     Mr. Coulter would contest the wage-theft, in either the pretense of ticket prepayment or penalized delivery errors, when they occurred. Occurrences as such were so common place that the Administration Department created a "payment plan", in which a certain amount was deducted from an employee's paycheck, every pay period, until the amount was equal to that of the ticket or product of the delivery error.

66.     Defendants required Plaintiff Gerald Coulter and other members of the proposed collective to engaged in reckless and illegal activity or face penalization.

67.     By requiring all drivers to answer his/her personal mobile phone at all times, Defendants endangered the welfare of their employees and the public.

68.     According to Mr. Coulter, declining phone calls from Defendants was not tolerated; even if the employee stated he/she was driving at the time and therefore unable to answer their mobile phone legally.

69.     Defendants gave Mr. Coulter $25 a month for his phone bill, to compensate drivers and continue such illegal activity, until 2016.

70. In 2016, Defendants gave Plaintiffs radios to use instead and stopped compensating Mr. Coulter's phone bill. However, if a radio is not available or not in service, Defendants still require Plaintiffs to use their personal mobile phone and remain available at all times, despite the illegality of such actions.

71. Plaintiff Gerald Coulter witnessed Mr. DeMasco harass other members of the proposed collective. Mr. DeMasco was prone to outbursts which carried racist undertones, directed at Mr. Simmions, who is an African-American, and other members of the proposed collective.

72. Mr. Coulter witnessed Mr. DeMasco call members of the proposed collective "dogs" in occasions when employees declined or questioned an assigned task.

73. Plaintiff Gerald Coulter and other members of the proposed collective were not paid consistently by Defendants, in order to force Plaintiffs to work overtime.

74. When Defendants needed Plaintiffs to work overtime on Saturday, Defendants would hold paychecks, which were scheduled to be released the Friday before.

75. Mr. Coulter recalls Defendants explicitly informing him and other members of the proposed collective that they would only receive their paycheck if they worked overtime the next day (Saturday).

76. Defendants practices violated the provisions of the FLSA regarding payment of a minimum wage to Plaintiffs and the members of the FLSA Collective Action by, among other things, failing to pay them the applicable minimum wage for all hours worked.

77. Accordingly, Plaintiffs and the members of the FLSA Collective Action are entitled to the difference between the wages paid by Defendants and the FLSA minimum wage as damages for Defendants' violations of the FLSA's minimum wage provisions.

78.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

79.     Plaintiffs and the members of the FLSA Collective Act seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

**FIRST CAUSE OF ACTION**
**(FLSA: Unpaid Minimum Wage)**

80.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

81.     As outlined above, during the relevant time period, Defendants practices violated the provisions of the FLSA regarding payment of a minimum wage to Plaintiffs and the members of the FLSA Collective Action by, among other things, failing to pay them the applicable minimum wage for all hours worked.

82.     Accordingly, Plaintiffs and the members of the FLSA Collective Action are entitled to the difference between the wages paid by Defendants and the FLSA minimum wage as damages for Defendants' violations of the FLSA's minimum wage provisions.

83.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

Plaintiffs and the members of the FLSA Collective Act seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (FLSA: Failure to Pay Overtime Compensation)

84.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

85.     During the relevant time period, Plaintiffs and the members of the FLSA Collective Action worked in excess of 40 hours per workweek and, because of Defendants' above-outlined violations of the FLSA, were not paid appropriate overtime compensation.

86.     Despite the hours worked by Plaintiffs and the members of the FLSA Collective Action, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and/or refused to pay Plaintiffs and the members of the FLSA Collective Action appropriate overtime compensation.

87.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

88.     Plaintiffs and the members of the FLSA Collective Action seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
### (NYLL: Unpaid Minimum Wage)

89.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

90.     As outlined above, Defendants' pay practices failed to pay Plaintiffs and the members of the New York Class a minimum wage required by the NYLL.

91.     Accordingly, Plaintiffs and the members of the New York Class are entitled to the difference between the NYLL minimum wage and the wages paid by Defendants as damages for Defendants' violations of the NYLL and Minimum Wage Order's minimum wage provisions.

92.     The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis within the meaning of NYLL § 198, and as a result Plaintiffs and the members of the New York Class are entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

93.     Plaintiffs and the members of the New York Class also seek to have their reasonable attorneys' fees and costs paid by Defendants, as provided by the NYLL.

**FOURTH CAUSE OF ACTION**
**(NYLL: Failure to Pay Overtime Compensation)**

94.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

95.     During the relevant time period, Plaintiffs and the members of the New York Class worked in excess of 40 hours per workweek and, because of Defendants' above-outlined violations of the NYLL, were not paid appropriate overtime compensation.

96.     Despite the hours worked by Plaintiffs and the members of the New York Class, Defendants willfully, in bad faith, and in knowing violation of the NYLL, failed and/or refused to pay them appropriate overtime compensation.

97.     The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis within the meaning of NYLL § 198, and as a result Plaintiffs and the members of the New York Class are entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

98.     Plaintiffs and the members of the New York Class also seek to have their reasonable attorneys' fees and costs paid by Defendants, as provided by the NYLL.

## FIFTH CAUSE OF ACTION
### (NYLL: Unlawful Deductions)

99.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

100.     During the relevant time period, as set forth above, Defendants unlawfully deducted portions of Plaintiffs' earned wages for purposes that were not for Plaintiffs' benefit and were outside the enumerated categories of permissible deductions from employee wages under NYLL § 193.

101.     The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis within the meaning of NYLL § 198, and as a result Plaintiffs and the members of the New York Class are entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

102.     Plaintiffs and the members of the New York Class also seek to have their reasonable attorneys' fees and costs paid by Defendant, as provided by the NYLL.

## SIXTH CAUSE OF ACTION
### (12 N.Y.C.R.R. § 137-1.7: Spread of Hours)

103.     Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs, as if fully set forth herein.

104.     At all relevant times, all Defendants are or were "employers" within the meaning of 12 N.Y.C.R.R. §§ 137.

105.     At all relevant times, Plaintiffs are or were "employees" within the meaning of 12 N.Y.C.R.R. §§ 137.

106.     At all relevant times, Plaintiffs are not or were not exempt from the provisions of 12 N.Y.C.R.R. §§ 137.

107.     Defendants failed to compensate Plaintiffs the legally mandated spread of hours pay for days in which they worked in excess of ten (10) hours.

108.     These practices were willful and lasted for the duration of the relevant time periods.

109.     These practices are in violation of 12 N.Y.C.R.R. § 137-1.7.

**SEVENTH CAUSE OF ACTION**
**(NYLL: Failure to Furnish Wage Statements)**

110.     Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs, as if fully set forth herein.

111.     During the relevant time period, Defendants failed to furnish Plaintiffs and the members of the New York Class with accurate wage statements that specifically enumerated certain criteria, as required by NYLL § 195(3).

112.     Defendants' violation of the NYLL was willful and, as a result, Defendants are liable to Plaintiffs and the members of the New York Class for $250 per violation for up to $5,000 per class member.

113.     In addition to statutory penalties, Plaintiffs and the members of the New York Class are entitled to recover from Defendants reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the proposed FLSA Collective Action and New York Class, pray for the following relief:

A.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

B.      A judgment declaring that the practices complained of herein are unlawful and in violation of FLSA and New York Labor Law;

C.      That the Court determines that this action may proceed as a collective action pursuant to 29 U.S.C. § 216(b);

D.      That the Court determines that this action may proceed as a class action pursuant to Fed. R. Civ. P. 23.

E.      An award to Plaintiffs for all damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

F.      An award to Plaintiffs of compensatory damages, including but not limited to damages for emotional pain and suffering where appropriate;

G.      An award to Plaintiffs of the amount of unpaid wages, including interest thereon, and penalties;

H.      An award to Named Plaintiffs of all applicable statutory damages to which they are entitled;

I.      An award to Plaintiffs of exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct where appropriate;

J.      An award to Plaintiffs for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees;

K.      An award to Plaintiffs of pre-judgment and post-judgment interest, as provided by law; and

L.      Any other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

Dated: May 19, 2017
          New York, New York                         Respectfully submitted,

                                                      THE OTTINGER FIRM, P.C.


                                            By: _____
                                                  Ariel Y. Graff
                                                  401 Park Avenue South
                                                  New York, New York 10016
                                                  Telephone: (212) 571-2000
                                                  Fax: (212) 571-0505
                                                  ari@ottingerlaw.com

                                                  *COUNSEL FOR PLAINTIFFS AND THE
                                                  PROPOSED CLASSES*

DocuSign Envelope ID: 1DDF9ABE-9602-41A3-BF52-B9DE9A02F142

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

D'Eric Simmions, John Coulter, and Jose Gomez,
individually and on behalf of all others similarly-
situated,

                        Plaintiffs,

            v.

Pierless Fish Corp., and Robert DeMasco, in his
individual and corporate capacity,

                      Defendants.

No.:

**NOTICE OF CONSENT**

I consent to be a party plaintiff in the foregoing lawsuit against Pierless Fish Corp. and Robert DeMasco. I understand that by filing this Notice of Consent, I will be bound by the judgment of the Court on all issues in this case, whether favorable to me or not. I hereby designate The Ottinger Firm, P.C. to represent me in this suit.

DocuSigned by

_____
Signature

D'eric Simmions
_____
Print name

May 19, 2017
_____
Date

Bk ny 11224
_____
City, State, and Zip Code

DocuSign Envelope ID: CB32BD66-F950-4DC3-9287-67BE5B265912

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

D'Eric Simmions, John Coulter, and Jose Gomez,
individually and on behalf of all others similarly-
situated,

No.:

                             Plaintiffs,

                  v.

Pierless Fish Corp., and Robert DeMasco, in his
individual and corporate capacity,

                        Defendants.

**NOTICE OF CONSENT**

I consent to be a party plaintiff in the foregoing lawsuit against Pierless Fish Corp. and Robert DeMasco. I understand that by filing this Notice of Consent, I will be bound by the judgment of the Court on all issues in this case, whether favorable to me or not. I hereby designate The Ottinger Firm, P.C. to represent me in this suit.

*Gerald Coulter*
Signature

Gerald Coulter
Print name

May 19, 2017
Date

Brooklyn ny, 11207
City, State, and Zip Code